UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY SHARP,<br>Plaintiff,<br>v.<br>MITCH MASHBURN, et al.,<br>Defendants. | No. 2:26-cv-01631-DJC-JDP<br><br>ORDER |

Plaintiff Amy Sharp sues the County of Solano, Supervisor Mitch Mashburn, and Danette Mercado for violations of federal and state law in connection with her alleged retaliatory termination from Supervisor Mashburn's office. Before the Court is Defendants' Motion to Dismiss the First Amended Complaint for failure to allege sufficient facts as a matter of law to support a claim against the County of Solano and the individual defendants. For the reasons explained below, the Court grants in part and denies in part the Motion to Dismiss.

**BACKGROUND**

Plaintiff Amy Sharp began working for Defendant Mitch Mashburn as one of two "district representatives" when Mashburn assumed office as a Supervisor on the Solano County Board of Supervisors on January 15, 2021. (FAC (ECF No. 16) ¶ 14.) Plaintiff served alongside Defendant Danette Mercado, who was also employed as a

district representative. (*Id.* ¶ 9.) Plaintiff alleges that during her employment, she became aware of Defendant Mashburn's actions in office that involved misuse of public resources, unethical conduct, and the violation of several California laws governing behavior of elected officials. (*Id.* ¶¶ 16–21.) Plaintiff also alleges that Defendant Mercado actively participated in this misconduct. (*Id.* ¶¶ 22–25.) Plaintiff brought these concerns of impropriety to Defendant Mashburn who "rebuffed, threatened, and ultimately terminated Plaintiff." (*Id.* ¶ 26.)

On May 16, 2025, Plaintiff requested a formal meeting with Defendant Mashburn to discuss Mashburn and Mercado's conduct. (*Id.* ¶ 28.) Instead of discussing Plaintiff's concerns, Plaintiff alleges that during the meeting, Defendant Mashburn shifted the focus to Plaintiff's husband's professional activities. (*Id.* ¶ 29.) Defendant Mashburn inquired into "rumors" about whether Plaintiff's husband was working for "California Forever or Flannery." (*Id.*) Plaintiff confirmed that her husband "was serving as lead negotiator on behalf of the Northern California Carpenters, Napa Solano Building Trades Council, and California Forever to negotiate a construction labor agreement." (*Id.* ¶ 30.) In response, Defendant Mashburn stated that Plaintiff "would need to quit her job as a district representative in his supervisorial office" if her husband continued. (*Id.* ¶ 31.) Plaintiff alleges that Defendant Mashburn also said: "[I'll] burn you both, and you'll never get another project through the county," in an attempt to "threaten[] Plaintiff and her family's livelihood." (*Id.* ¶ 32.)

One month later, Defendant Mashburn met with Plaintiff again, along with the Director of Human Resources, to terminate Plaintiff because her position was being "eliminated." (*Id.* ¶ 34.) However, the position continued to be "allocate[d]" after her termination. (*Id.*) Plaintiff alleges that this indicates that her "position was never 'eliminated' – or even slated for elimination." (*Id.*)

Plaintiff filed suit on April 24, 2026, alleging violations of Plaintiff's First and Fourteenth Amendment Rights under 42 U.S.C. § 1983 and violations of the California Labor Code. Defendants move to dismiss all claims against the County of Solano,

arguing Plaintiff does not adequately state a claim for liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (MTD (ECF No. 18) at 2.) Defendants also move to dismiss claims against Defendants Mashburn and Mercado for failing to sufficiently allege unconstitutional conduct. (*Id.*) The Motion to Dismiss is fully briefed (Opp'n (ECF No. 20); Reply (ECF No. 21)). On September 24, 2026, the Court heard oral argument on the Motion to Dismiss, where Attorney Theodore Wolter appeared for Plaintiff and Attorney Carrie Adams Hayes appeared for Defendants. At the conclusion of that hearing, the matter was submitted.

**LEGAL STANDARD**

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted only if the complaint lacks a "cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). While the Court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party," *Steinle v. San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019), if the complaint's allegations do not "plausibly give rise to an entitlement to relief," the motion must be granted, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S at 678. In the same vein, conclusory or formulaic recitations of elements do not alone suffice. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This evaluation of plausibility is a context-specific task drawing on "judicial experience and common sense." *Id.* at 679. However, a court may not assume that the plaintiff "can

prove facts that it has not alleged." *Associated Gen. Contractors Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

**DISCUSSION**

## I. Claims Against the County of Solano

Defendant County alleges that Plaintiff has failed to establish *Monell* liability in the operative complaint. The Court finds that Plaintiff's allegations are insufficient at this stage to establish *Monell* liability. (*See* FAC¶¶ 46–48.) Further, the Court does not consider Defendant Mashburn's alleged role as a final policymaker for the County as a basis for *Monell* liability, because Plaintiff failed to adequately allege the theory and relevant facts in the complaint. (*See* Opp'n at 5.) Therefore, Defendants' Motion to Dismiss all claims against Defendant County is granted with leave to amend the final policymaker theory of liability.

### A. The Legal Standard for *Monell* Liability

Under the Supreme Court's decision in *Monell v. Department of Social Services*, local governments may be held liable under § 1983 for wrongs done by the local government itself. 436 U.S. 658 (1978). A municipality or other local government entity is subject to *Monell* liability when that government, "under color of some official policy, 'causes' an employee to violate another's constitutional rights." *Monell*, 436 U.S. at 692. A municipality, however, cannot be held liable solely for the purported constitutional violations of its employees, "or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id.* at 691. The municipality itself must have acted through an official municipal policy or custom. *Id.* at 694.

The Ninth Circuit has recognized four theories for establishing municipal liability under *Monell*: "(1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton v. Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019). To plead a *Monell* claim and withstand a Rule 12(b)(6) motion to dismiss, allegations must appear

in the complaint and "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez v. Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). The plaintiff's allegations "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

**B. Plaintiff Fails to Adequately Allege *Monell* Theories Against the County**

Plaintiff alleges that Defendants violated Plaintiff's rights under the First Amendment and Fourteenth Amendment. Plaintiff asserts that the County is liable under *Monell* for these constitutional violations based on the County's failure to train and supervise, ratification of unconstitutional conduct, and conformance with unconstitutional policy, custom, or practice. However, Plaintiff fails to allege any training program or custom, policy, or practice that could be the basis of a *Monell* claim. (FAC ¶¶ 46–48.) In her Opposition, Plaintiff elaborates on the bases for *Monell* liability, but "[t]hese allegations should be in Plaintiff's complaint, not in [her] opposition to a motion to dismiss." *Masher v. Los Angeles*, No. 2:25-cv-04091-VBF-KES, 2026 WL 856668, at *9 (C.D. Cal. Mar. 25, 2026).

**1. Failure to Train**

A municipality's failure to train, supervise, or discipline employees can be a basis for § 1983 liability. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). "To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." *Benavidez v. County of San Diego*, 993 F.3d 1134, 1153–54 (9th Cir. 2021); *see also Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007).

Plaintiff's *Monell* claim fails as the complaint does not allege facts sufficient to meet the second requirement, namely that the County maintained a training policy deliberately indifferent to constitutional rights. This prong requires a plaintiff to show that a defendant both chose a training program that was inadequate to prevent constitutional violations and that was deliberately indifferent to such violations. *See Hyde v. City of Willcox*, 23 F.4th 863, 874–75 (9th Cir. 2022). Plaintiff has not alleged adequate facts to show either of these requirements were present.

First, Plaintiff fails to allege facts sufficient to establish that the County's training policy or supervision was deficient. Plaintiff asserts the Defendant County "failed to supervise Supervisor Mashburn, failed to adequately train him," and "failed to supervisor Ms. Mercado, [and] failed to adequately train her." (FAC ¶¶ 46–47.) To support these allegations, Plaintiff describes how "Supervisor Mashburn avoided his obligation to take mandatory ethics, harassment, and other mandatory County trainings by having Ms. Mercado compete these online courses on Supervisor Mashburn's behalf." (*Id.* ¶ 20.) Furthermore, Plaintiff alleges various other violations of County policy and state law, including that Defendant Mercado would approve her own weekly timecards and leave requests, as well as maintain outside employment at a private investigation firm that Defendant Mashburn used for his official duties. (*Id.* ¶¶ 23–24.)

The operative complaint does not provide information about Defendant County's training program or supervisory policies. Instead, it highlights Defendant Mashburn's effort to avoid the mandatory training that the County put in place. The Opposition asserts that this fact, along with Defendant Mercado approving her own timecards, are "sufficient" to find the County failed to train Defendants Mashburn and Mercado. (Opp'n at 7). However, based on the facts alleged, the Court cannot find that this case falls within the narrow class of cases not requiring more than a single incident to establish failure to train. Therefore, Plaintiff has not adequately established that Defendant County employs an inadequate training policy. *Hyde*, 23 F.4th at 875

(holding the plaintiffs did not state a failure to train claim under *Monell* because they relied solely on a single incident and pled no other facts to suggest a deficient training policy); *Smith v. Marina*, 709 F. Supp. 3d 926, 936 (N.D. Cal. 2024) (same).

Further, Plaintiff has not pled facts that support an inference of Defendant County's deliberate indifference. The operative complaint contains no factual allegations of other incidents in which County employees committed similar violations. Nor does it contain any allegations that the County knew of Defendants Mashburn and Mercado's efforts to avoid mandatory trainings and other County policies. Plaintiff's allegations thus fail to establish that the County was deliberately indifferent to inadequacies in their training policy. *Flores v. Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (holding insufficient allegations for failure to train claim under *Monell* because they failed to identify a pattern of similar violations to demonstrate deliberate indifference).

**2. Ratification**

Next, the FAC alleges that Defendant County "ratified Supervisor Mashburn's retaliatory actions" against Plaintiff. (FAC ¶ 46.) Ratification of the decisions of a subordinate by an official with final decision-making authority can be a policy for purposes of municipal liability under § 1983. *See St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). To show ratification, a plaintiff must demonstrate that the "authorized policymakers approve a subordinate's decision and the basis for it." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) (quoting *Praprotnik*, 485 U.S. at 127). The plaintiff must include factual allegations that the policymaker had knowledge of the constitutional violation and actually approved of it. *Nguyen v. Orange*, No. 8:22-cv-01693-DOC-ADS, 2023 WL 4682301, at *3 (C.D. Cal. June 8, 2023).

Plaintiff alleges that the Board of Supervisors ratified Defendant Mashburn's conduct when the Board adopted a budget that continued to fund the position that Mashburn had told Plaintiff was being eliminated. (Opp'n at 6.) Plaintiff alleges that the Board of Supervisors had knowledge of the violation of Plaintiff's constitutional

rights because they likely had heard the "rumor" about her husband's work and knew Plaintiff was terminated because of it. (*Id.*) Neither the Complaint nor the Opposition provides factual allegations that indicate that the Board knew details about Plaintiff's termination, other than the fact that they all work "in the same office suite as Supervisor Mashburn and [Plaintiff]." (*Id.*)

The Court does not find Plaintiff's alleged theory of ratification to be plausible. Even if the Board of Supervisors were aware of the reasons behind Plaintiff's termination, the alleged ratification vote was on a general budget bill and the decision to continue funding a staff position for a Supervisor does not amount to a knowing, express approval of any specific staffing decisions made by Defendant Mashburn. Other courts have reached similar conclusions. For example, the Eleventh Circuit in *Matthews v. Columbia County* found that the ratification theory did not apply in a case where a five-member County Board of Commissioners voted to eliminate a public employee's job allegedly in retaliation for protected speech. 294 F.3d 1294 (11th Cir. 2002). Despite evidence that the majority voting bloc were aware of the unconstitutional motive driving the termination, the Eleventh Circuit held that the final policymaker must ratify "not only the decision itself, but also the unconstitutional basis for it." *Id.* at 1297–98; *see also Trevino v. Gates*, 99 F.3d 911, 921 (9th Cir. 1996) (holding that a city council did not ratify unconstitutional police conduct when it voted to ratify punitive damages for victims of the conduct, because the vote did not amount to an express approval for the unconstitutional conduct itself). Thus, Plaintiff has failed to adequately allege that the Board of Supervisors ratified Defendant Mashburn's unlawful conduct and the unconstitutional basis for it. The Court denies leave to amend on the ratification theory of liability as amendment would be futile.

**3. Unconstitutional Policy, Custom, or Practice**

Plaintiff also claims *Monell* liability based on an unconstitutional custom or practice. (FAC ¶ 48.) To establish this theory of § 1983 municipal liability, a plaintiff "may attempt to prove the existence of a custom or informal policy with evidence of

repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded." *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992). "Proof of random acts or isolated events does not satisfy the plaintiff's burden to establish a custom or policy." *Picray v. Sealock*, 138 F.3d 767, 772 (9th Cir. 1998). Further, "bare allegations" are insufficient to survive dismissal. *Winger v. City of Garden Grove*, No. 8:13-cv-00267-AGR-NBx, 2013 WL 12376992, at *3 (C.D. Cal. Aug. 12, 2013). Instead, "*Monell* allegations survive[] dismissal where they specify the content of the policies, customs, or practices the execution of which gave rise to Plaintiffs' constitutional injuries." *Id.*

Here, Plaintiff does not cite evidence of repeated constitutional violations or provide the content of any policies, custom, or practices. Instead, she relies on the alleged facts of the present case to state her claim that the County has adopted a policy of "tolerating, encouraging, and approving violations of County employees' Constitutional rights to free association and rights to hold political beliefs, political motivations, political associations, and/or engage in political activity free from undue influence and retaliation." (FAC ¶ 48.) In the Opposition, Plaintiff also asserts a policy "of permitting individual supervisors to hire and terminate employees at will, without any oversight or opportunity for objective review." (Opp'n at 7). These allegations are conclusory and not sufficiently fact-based to support a *Monell* claim against the County due to an unconstitutional custom or practice. *See Twombly*, 550 U.S. at 555 (2007); *Iqbal*, 556 U.S. at 679.

**4. Final Policymaker**

Finally, Plaintiff also contends in the Opposition that Defendant Mashburn served as a final policymaker for the County when he terminated Plaintiff, such that Defendant County is directly liable for her unconstitutional termination. (Opp'n at 4–

////

////

////

7.) The Court cannot consider this claim on the merits, as it was raised for the first time in the Plaintiff's Opposition.[1]

"New allegations and claims cannot be pleaded in an opposition, and the Court's review on this motion to dismiss focuses on the allegations and claims pleaded in the Complaint." *Simmons v. Experian Info. Sols., Inc.*, No. 2:26-cv-00347-TLN-CSK, 2026 WL 2031799, at *6 (E.D. Cal. July 14, 2026) (citing *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998)). The Ninth Circuit has held that the "final policymaker" theory is a "new claim" because it "requires proof that differs significantly from the other" *Monell* theories. *Hartzell v. Marana Unified Sch. Dist.*, 130 F.4th 722, 735 (9th Cir. 2025) ("Once a 'final policymaker' theory is added, the final policymaker becomes a new central character whose presence significantly affects the scope of the claim.").

The factual allegations, to the extent they appear in the Complaint, are not sufficient to adequately plead the "final policymaker" theory under *Monell*. (*See* FAC ¶¶ 46-48, 50.) The Complaint gestures towards "conduct and actions" taken by "the County's official policy-makers as members charged with such responsibility, or by those to whom policy making authority was delegated," but does not clearly assert the final policymaker theory or contend that Defendant Mashburn is a final policymaker. (*Id.* ¶ 50.) These allegations do not "give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez*, 666 F.3d at 637.

---

[1] Plaintiff requests this Court take judicial notice of the Civil Service Rules of the County of Solano to support the final policymaker theory of liability. (Opp'n (ECF 20-1) at 1.) Pursuant to Federal Rule of Evidence 201, courts shall take notice, when requested and provided with sufficient information, of facts that are not subject to reasonable dispute because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). As matters of public record, the Civil Service Rules are proper subjects for judicial notice. *See Tollis Inc. v. San Diego*, 505 F.3d 935, 938 n.1 (9th Cir. 2007) ("Municipal ordinances are proper subjects for judicial notice."); *Madani v. Santa Clara*, No. 5:16-cv-07026-LHK, 2017 WL 1092398, at *4 (N.D. Cal. March 23, 2017) (taking judicial notice of the rules and procedures for the county personnel board). Further, Defendants have not objected to this Request for Judicial Notice. Accordingly, the Court will take judicial notice of the Civil Service Rules of the County of Solano.

In the Opposition, the Plaintiff provides evidence that lends support to Defendant Mashburn's role as a final decisionmaker in relation to employment decisions and policies for exempt employees in his office. (Opp'n at 5.) This could be sufficient to state a claim if properly pled. Therefore, the Court dismisses all claims against the County with leave to amend as to this theory of *Monell* liability.

## II. Claims against Defendant Mashburn

### A. Retaliation in Violation of First Amendment Right to Free Speech

Plaintiff's Second Claim for Relief alleges Defendants retaliated against her for speech and perceived speech in violation of the First Amendment, resulting in her termination. (FAC ¶¶ 54–66.) Under the First Amendment, governmental actors are prohibited from "abridging the freedom of speech . . . or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const., Amend. I.

"It is well settled that the state may not abuse its position as employer to stifle 'the First Amendment rights its employees would otherwise enjoy as citizens to comment on matters of public interest.'" *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009) (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)). Courts have recognized a cause of action where an individual has suffered retaliation for his or her perceived association with the speech of a close family member. *Freeman v. Riverside*, No. 5:18-cv-02171-JFW-KKx, 2019 WL 7905733, at *5 (C.D. Cal. Apr. 5, 2019).

Courts utilize the *Pickering* test to balance a public employee's interest in commenting on matters of public concern and the state's interest as an employer in promoting efficient public service. *Ohlson v. Brady*, 9 F.4th 1156, 1162 (9th Cir. 2021). Pickering offers a sequential five-step series of questions:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment

> action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Eng*, 552 F.3d at 1070. The burden is on the plaintiff to show the first three steps; the burden then shifts to the government. *See id.* at 1070–72. Plaintiff claims two distinct violations of free speech, and the Court will address them in turn.

**1. Retaliation Based on Speech Regarding Internal Misconduct**

Plaintiff alleges she was retaliated against for her internal research and reporting of misconduct occurring in Defendant Mashburn's office. (FAC ¶ 57.) The parties dispute the second and third element of the *Pickering* test: whether Plaintiff spoke as a private citizen or as a public employee when reporting alleged misconduct and whether her protected speech or expression was a substantial or motivating factor in the adverse employment action. (MTD at 9–12.)

**i. Plaintiff Adequately Alleges that She Spoke as a Private Citizen**

Defendants argue that Plaintiff's internal reports regarding misconduct within her office were made as a public employee, rather than a private citizen, because they stayed within her chain of command. (MTD at 9–10.) To analyze whether a public employee was speaking as a private citizen, the Ninth Circuit has adopted "guiding principles" that include: "(1) whether the employee confined his communications to his chain of command . . . (2) the subject matter of the communication . . . ; and (3) whether the employee spoke in direct contravention to his supervisor's orders." *Brandon v. Maricopa Cnty.*, 849 F.3d 837, 843–44 (9th Cir. 2017) (internal quotations omitted).

Plaintiff alleges that her "reporting of possible statutory violations and subsequent research of whistleblower protections was done outside the scope of [her] ordinary duties," and, therefore, she was acting as a private citizen. (FAC ¶ 57.) Furthermore, she alleges that Defendant Mashburn "repeatedly rebuffed, threatened,

and ultimately terminated Plaintiff," partially because of her concerns about Defendants Mashburn and Mercado's behavior. (*Id.* ¶ 26.) For example, Defendant Mashburn, who was previously "employed with the County Sheriff-Coroner," allegedly told Plaintiff that "in the County Jail, 'we don't report concerns to HR, we take it to the sally port and fight it out.'" (*Id.* ¶¶ 37, 39.) These allegations adequately plead that Plaintiff's speech was directed toward a subject of public concern and her speech occurred in contravention of her supervisor's orders and threats.

Still, Defendants contend the whistleblowing was employee speech because Plaintiff reported the concerns "to her immediate supervisors, through the ordinary chain of command." (Reply at 10.) However, staying within the chain of command is not dispositive for the inquiry. The Ninth Circuit has stated that "if a public employee raises within the department broad concerns about corruption or systemic abuse, it is unlikely that such complaints can reasonably be classified as being within the job duties of an average public employee, except when the employee's regular job duties involve investigating such conduct, e.g., when the employee works for Internal Affairs or another such watchdog unit." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1075 (9th Cir. 2013); *see also Marable v. Nitchman*, 511 F.3d 924, 932–33 (9th Cir. 2007) (finding complaints of misconduct were spoken in a private capacity even when reported internally and discovered in the course of plaintiff's work because it was not a part of his official duties to ensure supervisors were refraining from corrupt practices); *Robinson v. York*, 566 F.3d 817, 824 (9th Cir. 2009) (holding that "it would be absurd to extend First Amendment protection only to those whistleblowers who immediately appear on the local news"). Because there are no allegations that Plaintiff's job duties involved investigating misconduct, the Court finds that reporting in the chain of command does not turn Plaintiff's speech into employee speech.

"At this stage of the proceedings, the Court must construe the pleadings in a light most favorable to [Plaintiff] and accept as true [Plaintiff's] factual allegation that her job responsibilities did not include opposing [] illegal practices." *Hardin v.*

*Mendocino Coast Dist. Hosp.*, No. 3:17-cv-05554-JST, 2018 WL 6331009, at *2 (N.D. Cal. Dec. 4, 2018); *see also Eng*, 552 F.3d at 1071. Viewed under this standard, the Complaint sufficiently alleges that Plaintiff's speech regarding Defendant Mashburn and Mercado's alleged state law violations were made as a private citizen.

**ii. Plaintiff Adequately Alleges that the Reports of Misconduct Were a Substantial and Motivating Factor in her Termination**

To demonstrate that retaliation was a "substantial or motivating factor behind an adverse employment action," a plaintiff can "(1) introduce evidence that the speech and adverse action were proximate in time, such that a jury could infer that the action took place in retaliation for the speech; (2) introduce evidence that the employer expressed opposition to the speech; or (3) introduce evidence that the proffered explanations for the adverse action were false and pretextual." *Anthoine v. N. Cent. Ctys. Consortium*, 605 F.3d 740, 750 (9th Cir. 2010). "As with proof of motive in other contexts, this element of a First Amendment retaliation suit . . . involves questions of fact that normally should be left for trial." *Ulrich v. San Francisco*, 308 F.3d 968, 979–80 (9th Cir. 2002).

Here, Plaintiff sufficiently alleges evidence of retaliatory motive to survive dismissal. As mentioned above, the Complaint indicates that Defendant Mashburn expressed opposition to Plaintiff's reports of misconduct. (*See* FAC ¶¶ 26, 58.) Further, taking Plaintiff's assertions as true, the FAC provides evidence that Defendant Mashburn's proffered reason for Plaintiff's termination was pretextual. While Defendant Mashburn purportedly terminated Plaintiff because her position was being "eliminated," the Board of Supervisors approved an allocation for two district representatives in Defendant Mashburn's office four days after Plaintiff's termination. (*Id.* ¶ 34.) Defendants have not offered a non-retaliatory motive for termination or disputed that Defendant Mashburn's reason for terminating Plaintiff was pretextual.

Therefore, the FAC sufficiently alleges that Plaintiff Sharp's protected speech was a substantial and motivating factor for her termination.

**2. Retaliation Based on Perceived Association with Speech of Husband**

Plaintiff also contends that Defendant Mashburn took adverse employment actions against her based on Mashburn's perception that Plaintiff "support[ed] her husband's work on behalf of California Forever." (Opp'n at 11.) Defendants argue that Plaintiff's allegations merely show a "generalized disapproval of [her] spouse's professional activity" by Defendant Mashburn and does not sufficiently identify any speech or perceived speech. (Reply at 8.)

A retaliation claim based on "perceived speech—i.e., speech that the plaintiff was incorrectly thought to have made—is cognizable under the First Amendment." *See Heffernan v. Paterson*, 578 U.S. 266, 268 (2016) (government employee could maintain a First Amendment retaliation claim where he was demoted because "the official believed, but incorrectly believed, that the employee had supported a particular candidate for mayor"); *see also DeCrane v. Eckart*, 12 F.4th 586, 594 (6th Cir. 2021) (recognizing First Amendment retaliation claim premised on erroneously "perceived speech" based on *Heffernan*). For example, in *Freeman*, the district court held that allegations detailing negative comments about the plaintiff's husband's Facebook posts and an attempt to enlist the plaintiff to silence her husband followed by an adverse employment action were adequate to satisfy the pleading requirements for a First Amendment retaliation claim based on perceived speech. 2019 WL 7905733, at *5–7.

Here, Plaintiff sufficiently alleges that Defendant Mashburn took opposition to Plaintiff's perceived support of her husband's professional activities, beyond a "generalized disapproval." (*See* Reply at 8.) Defendant Mashburn specifically told Plaintiff to quit her job if her husband continued working for California Forever, and threatened her directly, including that he would "burn [her]" and "[she]'ll never get another project through the country." (FAC ¶ 32.) Taking the allegations as true, Defendant Mashburn specifically included Plaintiff in his threats, making a strong enough showing that he "perceived and/or believed that Plaintiff supported the

projects and applicants her husband, Mr. Sharp, represented before County staff and the County Board of Supervisors." (*Id.* ¶ 33.)

**B. Intimate Association**

Plaintiff further alleges that Defendant Mashburn terminated her employment "because of her intimate association with her husband," violating her First and Fourteenth Amendment right to intimate association. (FAC ¶ 43.) Defendants argue that terminating a public employee because of the speech of their spouse does not rise to a violation of the right to intimate association. (*See* MTD at 5–6; Reply at 1–2.) The Court holds that Plaintiff has stated a claim for violation of her right to intimate association against Defendant Mashburn.

The constitutional source of the right to intimate association has not been authoritatively determined by the Supreme Court or the Ninth Circuit. *DeFrancesco v. Robbins*, 136 F.4th 933, 943 (9th Cir. 2025); *see also IDK, Inc. v. Clark Cnty.*, 836 F.2d 1185, 1192 (9th Cir. 1988) (recognizing that "a single association may have intimate and expressive features and therefore be entitled to claim the protection of both the first and fourteenth amendments"). Still, the Ninth Circuit has consistently "held that claims under both the First and Fourteenth Amendment for unwarranted interference with the right to familial association could survive a motion to dismiss." *Keates v. Koile*, 883 F.3d 1228, 1236 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001)). Further, the source of the right does not impact the present claim, because "the Ninth Circuit 'analyze[s] the right of intimate association in the same manner regardless [of] whether [the court] characterize[s] it under the First or Fourteenth Amendments.'" *Est. of F.R. v. Yuba*, No. 2:23-cv-00846-WBS-CKD, 2025 WL 1549104, at *2 (E.D. Cal. May 30, 2025) (quoting *Mann v. Sacramento*, 748 F. App'x 112, 115 (9th Cir. 2018)).

The scope of the protection provided by the right to intimate association also remains "unsettled" within the Ninth Circuit. *See DeFrancesco*, 136 F.4th at 943–44 & 944 n.10. The Court looks to the harm the right is meant to prevent to decide whether

the facts alleged state a violation. Since its inception, the right has existed to provide a "constitutional shelter" against government intrusion into certain types of intimate relationships, including marriage, that are central to the individual liberty. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 619 (1984). These relationships "thereby foster diversity and act as critical buffers between the individual and the power of the State." *Id.* In the present case, Defendants allegedly sought to enlist Plaintiff as their agent within her own marriage to silence the speech of her husband, a private citizen. (FAC ¶¶ 29–32.) If Plaintiff had ceded to the pressure, the marriage would have ceased to be a buffer between the individual and the state, but rather a channel for it. For her refusal, Plaintiff lost her job as a public employee, (*id.* ¶ 34), despite the Supreme Court cautioning "time and again that public employers may not condition employment on the relinquishment of constitutional rights." *Lane v. Franks*, 573 U.S. 228, 236 (2014).

Further, precedent in the Ninth Circuit "favor[s] the recognition of the protection [] claim[ed] here." *DeFrancesco*, 136 F.4th at 944. "[S]everal district courts, including some in [this] circuit, have acknowledged that the First Amendment's antiretaliation protection for public employees may cover the relatives of those engaged in First Amendment-protected activity." *Id.* at 941. For example, in *Vargas v. City of Tracy*, the court denied summary judgment on a First Amendment intimate association claim that alleged an adverse employment action against a public employee based on the speech of his spouse. No. 2:22-cv-01454-WBS-CSK, 2025 WL 578475, at *5 (E.D. Cal. Feb. 21, 2025). Likewise, a district court in Oregon concluded that "[a] retaliatory act taken against a person because of the spouse's conduct violates the First Amendment right of intimate association." *Quesnoy v. Oregon*, No. 3:10-cv-01538-ST, 2011 WL 5439103, at *11 (D. Or. Nov. 4, 2011).

Without guidance from the Ninth Circuit, these district courts relied on the persuasive authority of the Second Circuit in *Adler v. Pataki*, where the court held that if there is a "right to maintain an intimate marital relationship free of undue state interference," then firing a public employee because of the conduct of their spouse

"properly invokes the protection of" the Constitution. 185 F. 3d 35, 44 (2nd Cir. 1999). In that case, a public employee was fired because of his wife's discrimination lawsuit against the state. *Id.* The termination was "well across the line" that separates "a state's permissible and impermissible actions against an employee based on a spouse's conduct," because "a relationship as important as marriage cannot be penalized for something as insubstantial as a public employer's discomfort about a discrimination lawsuit brought by an employee's spouse." *Id.* Similarly, Plaintiff's termination purportedly because of Defendant Mashburn's "discomfort" about the perceived political activities of Mr. Sharp crosses the line into impermissible state action against an employee.[2] (FAC ¶ 32.) Thus, based on persuasive precedent and the underlying logic of the right, the Court holds that the facts alleged fall squarely within the heartland of the right to intimate association.

Taking all factual assertions as true, Plaintiff plausibly claims she was harassed and fired for her intimate association with her spouse. (FAC ¶¶ 29–34.) Therefore, the Motion to Dismiss the Second Cause of Action against Defendant Mashburn is denied.

**C. State Claims Against Defendant Mashburn**

Next, Defendants move to dismiss Plaintiff's retaliation claims brought under California Labor Code sections 1101, 1102, 1102.5, and 98.6. (MTD at 12–14.)

**1. California Labor Code Sections 1101 and 1102**

Defendants assert that Plaintiff's claims brought under California Labor Code sections 1101 and 1102 fail as a matter of law against Defendant Mashburn, because these provisions (1) do not apply to public employers or governmental entities and (2) cannot be brought against individual defendants.

---

[2] To adequately plead the right to intimate association under either the First or Fourteenth Amendments, Defendants contend that this Circuit requires a plaintiff to plead governmental conduct that "directly and substantially burdens the protected relationship itself." (Reply at 1.) But the Ninth Circuit recently discussed the "direct and substantial" burden test as it relates to intimate association and declined to adopt it. *DeFrancesco*, 136 F.4th at 943–44 & 944 n.10. Therefore, "what it would take to establish [a] violation" of the right to intimate association remains unsettled in the Circuit. *Id.* at 943.

Because the claims fail on the second point, the Court declines to consider the first. It is "well-established" that sections 1101 and 1102 impose liability only on "employers," not individual supervisors. *San Bernardino City Pro. Firefighters v. San Bernardino*, No. 2:10-cv-01773-PSG-DTBx, 2010 WL 2557226, at *3 (C.D. Cal. June 18, 2010). "The plain language of the Labor Code provisions at issue clearly indicates that the provisions are meant to establish prohibited activity by employers, not individuals." *Id.* at *3 & *3 n.3. Plaintiff offers no authority or argument that these provisions apply to individual defendants.

Accordingly, the Court grants the Motion to Dismiss Plaintiff's third and fourth claims against individual defendants without leave to amend.

**2. California Labor Code Sections 98.6 and 1102.5**

Plaintiff's fifth and sixth claims allege violations of California's whistleblower protection laws, California Labor Code sections 98.6 and 1102.5. These two sections prohibit retaliation against employees who assert their rights or report unlawful conduct. Defendants argue that these provisions do not apply to individuals, while Plaintiff argues that the provisions impose individual liability on non-employers.

**i. Plaintiff Does Not Adequately Allege that California Labor Code Section 1102.5 Can Be Asserted Against Defendant Mashburn**

For the same reason as Plaintiff's third and fourth causes of action failed against Defendant Mashburn, the Court holds that the fifth cause of action fails as well. Plaintiff herself notes that the "overwhelming majority" of courts to address this question have found that section 1102.5 "does not impose individual liability on non-employers." (Opp'n at 13.) The Court holds the same here.

Section 1102.5 prohibits "[a]n employer, or any person acting on behalf of the employer" to retaliate against an employee for disclosure of their employer's unlawful activity. Cal. Lab. Code § 1102.5(b). In 2014, the statute was amended to add the language "or any person acting on behalf of the employer." *Tillery v. Lollis*, No. 1:14-cv-02025-KJM, 2015 WL 4873111, at *9 (E.D. Cal. Aug. 13, 2015). "It is undisputed

that before 2014, only employers could be held civilly liable for violations of § 1102.5." *Dawson v. Caregard Warranty Serv., Inc.*, No. 5:23-cv-01139-SB-SP, 2024 WL 661198, at *1 (C.D. Cal. Jan. 12, 2024). In the wake of the amendment, courts considered whether the amended language created individual liability. A recent case out of a California Court of Appeal held that, "in a matter of first impression in California courts," individual managers and supervisors are not personally liable for retaliation under section 1102.5. *Chaudhry v. State*, 2026 WL 2903565, at *1 (Cal. Ct. App. Sept. 28, 2026). There, the court relied on the legislative history of the provision, analogous California Supreme Court state decisions, as well as "the overwhelming consensus of federal district courts that have addressed the issue." *Id.* at *10–12. The Court agrees that the statutory context of section 1102.5 and the legislative history of the 2014 amendment "make[] clear that civil liability for violations of [section] 1102.5 remains limited to employers." *Id.* at *5.

Plaintiff argues that the claim should not be dismissed because the law remains "unsettled." (Opp'n at 13.) For this proposition, Plaintiff relies on a case that discusses the claim in the context of a motion to remand based on fraudulent joinder, rather than a motion to dismiss. *See De Oca v. Saputo Cheese USA, Inc.*, No. 1:24-cv-01519-JLT-EPG, 2026 WL 865889, at *3 (E.D. Cal. Mar. 30, 2026). The *Chaudhry* court addressed this case and similar ones and found that they "do not outright hold that section 1102.5 does impose individual liability, merely that the statute is ambiguous or might create such liability, so they are of little assistance here." 2026 WL 2903565, at *12. Indeed, the court in *Oca* noted that the outcome would likely be different in a motion to dismiss because it requires "the court to employ a legal standard that is distinct from the more demanding jurisdictional standard used to assess fraudulent joinder on removal." 2026 WL 865889, at *3.

////

////

////

Therefore, the Court finds that individual liability is not available under section 1102.5 and grants the Motion to Dismiss Plaintiff's fifth claim against Defendant Mashburn in his individual capacity without leave to amend.[3]

**ii. Plaintiff Does Not Adequately Allege that California Labor Code Section 98.6(a) Can Be Asserted Against Defendant Mashburn**

Similarly, Defendant argues that Plaintiff's sixth cause of action fails against Defendant Mashburn because section 98.6(a) does not impose individual liability. (MTD at 14.) The language and the legislative history of the provision differ in important ways from section 1102.5, and there is no California case law interpreting the question presented. Accordingly, the Court must apply California's rules of statutory interpretation to predict how the California Supreme Court would address the question. *See Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 945 (9th Cir. 2013) ("In interpreting a state statute, we apply the state's rules of statutory construction."); *see also Tillery*, 2015 WL 4873111, at *9 ("If state courts have not addressed the particular issue before it, a federal court must use its best judgment to predict how the highest state court would resolve the issue.") (quoting *Strother v. S. Cal. Permanente Med. Group*, 79 F.3d 859, 865 (9th Cir.1996)).

"[T]he key to statutory interpretation is applying the rules of statutory construction in their proper sequence." *MacIsaac v. Waste Mgmt. Collection & Recycling, Inc.*, 134 Cal. App. 4th 1076, 1082 (Cal. Ct. App. 2005). California courts start by looking to the plain meaning of statutory language. *See Martinez v. Combs*, 49 Cal. 4th 35, 51 (Cal. 2010); *MacIsaac*, 134 Cal. App. at 1082. If the language is clear and unambiguous, the court's "task is at an end, for there is no need for judicial

---

[3] During the hearing on the present motion, Plaintiff made an alternative argument that Supervisor Mashburn should be considered an "employer" for the purposes of the California Labor Code. However, Plaintiff does not adequately plead this in the operative complaint, only stating once that Defendant Mashburn is an employer, without discussing how he meets this definition. (*See* FAC ¶ 88.) Because "arguments raised for the first time at oral argument are waived," the Court declines to consider this argument. *Valentine v. City of Chicago*, 452 F.3d 670, 680 (7th Cir. 2006). Plaintiff can include this theory in an amended complaint if she so chooses.

construction." *MacIsaac*, 134 Cal. App. 4th at 1083. "Nevertheless, the 'plain meaning' rule does not prevent a court from determining whether the literal meaning of the statute comports with its purpose." *Id.* To determine if there is ambiguity, courts "construe the words of the statute in context, keeping in mind the statutory purpose." *Id.*; *Martinez*, 49 Cal. 4th at 51. If meaning cannot be ascertained at the first step, the court next turns to extrinsic sources, such as legislative history and cannons of statutory construction. *Martinez,* 49 Cal. 4th at 51. Finally, if uncertainty persists, the court may apply its common sense and "consider the consequences of a particular interpretation, including its impact on public policy." *Id.* (quoting *Wells v. One2One Learning Found.*, 39 Cal. 4th 1164, 1190 (Cal. 2006)).

Section 98.6 states: "[a] person shall not discharge an employee or in any manner discriminate, retaliate, or take any adverse action against any employee." Cal. Lab. Code § 98.6(a). The term "person" is defined in the California Labor Code as "any person, association, organization, partnership, business trust, limited liability company, or corporation." *Id.* § 18. On its face, person "can refer both to individual employees and the organizations that employ them." *Stone v. Alameda Health Sys.*, 16 Cal. 5th 104, 1079 (Cal. 2024). But when analyzing liability under the California Labor Code, the California Supreme Court has advised that the definition of "person" is "by itself "not dispositive. *Id.* The California Supreme Court's analysis in *Jones v. Lodge at Torrey Pines Partnership* confirms that California courts will look beyond the plain meaning of "person" in the California Labor Code to determine liability. 42 Cal. 4th 1158, 1162 (Cal. 2008). There, the court analyzed the retaliation provision of FEHA that makes it unlawful for "any employer, labor organization, employment agency, or person" to retaliate against an employee, and determined that it did not create individual liability. *Id.* The California Supreme Court held that the use of "person," in the context of the law, did not unambiguously create personal liability because: (1) personnel decisions, including retaliation, are part of a supervisor's job; (2) FEHA exempts employers with fewer than five employees; (3) liability would create

conflicts of interest among the supervisors and company and chill effective management; and (4) liability would impose a litigation burden on supervisors. *Id.* at 1167. A California Court of Appeal recently followed the reasoning in *Jones* and determined there was ambiguity in the word "person" in California Labor Code section 1102.5. *See Chaudhry*, 2026 WL 2903565, at *9. Applying state rules of statutory interpretation, the Court finds that it is ambiguous whether the word "person" in section 98.6(a) permits extending liability to individual supervisors. Because the term is ambiguous, the Court looks to "other aids, such as the statute's purpose, legislative history, and public policy." *Id.* at 1163 (quoting *Coalition of Concerned Communities, Inc. v. Los Angeles*, 34 Cal.4th 733, 737 (2004)).

Unlike section 1102.5, the "person" language in Section 98.6(a) appeared in the original version of the provision when it was passed in 1978.[4] *See* 1978 Cal. Stat. 4064. Upon enactment in 1978, the Legislative Counsel stated, in relevant part, that "[e]xisting law prohibits any person from discharging or threatening with discharge, or in any other manner discriminating against, an employee who has testified or is about to testify in any investigation or proceeding relative to the enforcement of various provisions of law relating to wages, hours, and working conditions . . . ." Legis. Counsel Dig., Assem. Bill No. 2945, 4 Stats.1978, Summary Dig., p. 348–49. The "existing law" referenced in the Digest is the former section 1196 of the California Labor Code, which was adopted by the California Legislature in 1937 as part of the original Labor Code. *See* 1937 Cal. Stats. 217; *see also* 1937 Cal. Assem. J. Session 564, Assem. Bill No. 2100 ("An act to establish a Labor Code, thereby consolidating

---

[4] Defendants assert that before an amendment in 2016, Section 98.6(a) only prohibited "an employer" from retaliating. (Reply at 13.) Defendants are incorrect. The subject of the subsection has been "person" since 1978. Still, Defendants cite precedent that they claim construed the pre-2016 language as "directed at employer conduct." (*Id.*) The case Defendants cite does not rule on the question of individual liability under section 98.6, and Defendants cite no other controlling authority. *See Muniz v. United Parcel Serv., Inc.*, 731 F. Supp. 2d 961, 967 (N.D. Cal. 2010) (finding section 98.6 claim fails based on a lack of causation between protected activity and adverse employment action).

and revising the law relating to labor and employment relations."). The 1937 text of the statute reads:

> Any employer who discharges, threatens to discharge, or in any other manner discriminates against any employee because the employee has testified or is about to testify, or because the employer believes that the employee will testify in any investigation or proceedings relative to the enforcement of this chapter, is guilty of a misdemeanor.

1937 Cal. Stat. 217; see also *Stiefel v. Bechtel Corp.*, 497 F. Supp. 2d 1138, 1149 (S.D. Cal. 2007). Although the 1978 enactment replaced "employer" with "person," nothing indicates the Legislature intended expanded liability. The Legislative Counsel described existing law—which by its terms reached "any employer"—as already prohibiting "any person" from retaliating. Legis. Counsel Dig., Assem. Bill No. 2945, 4 Stats.1978, Summary Dig., p. 348. Though not binding, California courts give "great weight" to the Legislative Counsel's summaries and "[i]t is reasonable to presume that the Legislature amended those sections with the intent and meaning expressed in the Legislative Counsel's digest." *Jones*, 42 Cal. 4th at 1170 (quoting *People v. Superior Court*, 24 Cal. 3d 428, 434 (Cal. 1979)). Therefore, based on the legislative history, the 1978 Legislature read "person" and "employer" as synonymous and interchangeable, and the amendment did not intend to establish individual liability where there was none before.

Defendants also point to the remedies provided in section 98.6 as proof that the Legislature contemplated liability only for employers. (Reply at 14.) An aggrieved employee is entitled to reinstatement and lost wages "caused by those acts of the employer." Cal. Lab. Code § 98.6(b)(1). Further, the provision caters the penalties towards employers, subjecting "an employer" to a misdemeanor and a civil penalty for refusing "to hire, promote, or otherwise restore" an employee. *Id.* (b)(2)–(3). The *Chaudhry* court relied on an analogous argument when determining there was no individual liability in section 1102.5, reasoning that remedies directed towards

recovery from the employer "suggest[] that the Legislature intends for employees to be able to sue only employers, not individual supervisors." 2026 WL 2903565, at *9. Here, too, the remedies scheme of section 98.6 implies a focus on recovery and liability for the employer, rather than an individual supervisor.

Therefore, the Court finds that there is no individual liability in section 98.6 of the California Labor Code and grants the Motion to Dismiss Plaintiff's fifth claim against Defendant Mashburn in his individual capacity without leave to amend.

**III. Claims against Defendant Mercado**

Plaintiff also brings the first four causes of action against Defendant Danette Mercado. Defendants argue that the Complaint contains no allegations about Defendant Mercado's "personal participation in the alleged constitutional violation," and, therefore, should be dismissed. (MTD at 8.) Plaintiff argues that she adequately alleged Defendant Mercado's participation in the "scheme to deprive Ms. Sharp of her constitutional rights," and more information about the scheme would be uncovered through discovery. (Opp'n at 8.) For the same reasons as above, the third and fourth causes of action under Sections 1101 and 1102 of the California Labor Code against Defendant Mercado are dismissed without leave to amend, because these provisions do not impose individual liability. However, for the reasons below, the Court denies Defendants' motion to dismiss Defendant Mercado from the first and second claims.

Section 1983 imposes liability both on persons who deprive a plaintiff of constitutional rights and on those who "cause[]" the plaintiff "to be subjected" to that deprivation. *Peck v. Montoya*, 51 F.4th 877, 888–89 (9th Cir. 2022). If an official's individual actions do not "themselves rise to the level of a constitutional violation," that official may be held liable under § 1983 "only if [they are] an integral participant in the unlawful act." *Id.* (citation omitted). An official's conduct may render them an "integral participant" in at least two scenarios: "those in which (1) the defendant knows about and acquiesces in the constitutionally defective conduct as part of a common plan with those whose conduct constitutes the violation or (2) the defendant 'set[s] in

motion a series of acts by others which [the defendant] knows or reasonably should know would cause others to inflict the constitutional injury.'" *Id.* (quoting *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978)). Further, individuals who are aware of retaliation and do nothing to stop it can be liable for First Amendment violations under § 1983. *OSU Student All. v. Ray*, 699 F.3d 1053, 1075 (9th Cir. 2012). But liability cannot attach to "a mere bystander" who had "no role in the unlawful conduct." *Chuman v. Wright*, 76 F.3d 292, 294–95 (9th Cir.1996).

Taking the allegations in the Complaint as true, Defendant Mercado was an "integral participant" in Defendant Mashburn's retaliation. Plaintiff alleges that Mercado was implicated in Defendant Mashburn's misconduct, as well as Plaintiff's reports about the misconduct. (FAC ¶ 16.) For example, Defendant Mercado completed Defendant Mashburn's mandatory training on ethics and harassment on his behalf. (*Id.* ¶ 20.) Further, upon Plaintiff's termination, Mercado participated in "actively, and publicly, misrepresent[ing] the circumstances of Plaintiff's termination," for example telling "individuals that Plaintiff is 'just a housewife' who 'added nothing to the office' and who was 'doing bad things.'" (*Id.* ¶ 41.) According to the Complaint, Defendant Mercado also stated that "she had 'gotten rid of' Plaintiff." (*Id.*) These allegations indicate that Defendant Mercado was closely involved in and claimed credit for the alleged retaliation against Plaintiff.

Accordingly, Plaintiff has sufficiently alleged Defendant Mercado's role in the purported retaliation as an "integral participant," and the Court denies Defendants' Motion to Dismiss the first and second claims against Defendant Mercado for the same reasons the Court declined to dismiss the first and second claims against Defendant Mashburn.

////

////

////

////

## IV. CONCLUSION

For the reasons discussed above, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (ECF No. 18) is GRANTED IN PART and DENIED IN PART as follows:

1. Defendants' Motion to Dismiss is GRANTED as to:
   a. Plaintiff's First through Sixth Claims against the County of Solano with leave to amend;
   b. Plaintiff's Third and Fourth Claims against Defendants Mashburn and Mercado in their individual capacities without leave to amend; and
   c. Plaintiff's Fifth and Sixth Claims against Defendant Mashburn in his individual capacity without leave to amend.
2. Defendants' Motion to Dismiss is DENIED as to Plaintiff's First and Second Claims against Defendants Mashburn and Mercado.

IT IS SO ORDERED.

Dated: **November 4, 2026**

Daniel J. Calabretta

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC11 – sharp26cv01631.mtr